UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:**
**06-21406-CIV-MORENO**

EUGENE CAVICCHI,

     Plaintiff,

vs.

MICHAEL CHERTOFF, SECRETARY OF THE
DEPARTMENT OF HOMELAND SECURITY,
BY AND THROUGH THE U.S. BUREAU OF
CUSTOMS AND BORDER PROTECTION,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant Chertoff's Motion for Summary

Judgment **(D.E. No. 73)**, filed on **December 23, 2007**.

THE COURT has considered the motion, response, reply to the response and the pertinent

portions of the record.  The Court has also heard oral arguments on the Motion for Summary

Judgment and is otherwise fully advised in the premises.

## I.  INTRODUCTION

Plaintiff Eugene Cavicchi worked for the Department of Homeland Security as a part-time

Senior Customs Inspector until his retirement on November 1, 2005.  He filed Equal Employment

Opportunity ("EEO") complaints on August 15, 2003, November 10, 2003 and February 17, 2005.

He has exhausted his administrative avenues, and it is from these claims that his present suit arises.

Plaintiff also engaged in prior EEO activity by filing complaints in 2001 and 2002 and reporting his

office to Internal Affairs in July of 2003 for providing preferential treatment in exchange for gratuities. This is Plaintiff's third suit in the Southern District of Florida.

Plaintiff's final amended complaint in this case contains the following allegations: Count I for discrimination on the basis of protected activity pursuant to Title VII of the Civil Rights Act of 1964; Count II for retaliation under Title VII; Count III for violation of the Privacy Act of 1974; Count IV for refusal to accommodate or transfer from a hostile work environment; Count V for adverse employment action; and Count VI for constructive discharge. See 42 U.S.C. § 2000e-3(a). The alleged discriminatory action in this case occurred from February 2002 to November 2005 and comprised 25 distinct instances.[1] Plaintiff seeks declaratory judgment, injunctive relief, and damages resulting from the alleged discrimination and other violations.

Defendant filed his Motion for Summary Judgment on December 23, 2007, arguing that Plaintiff failed to: (1) establish a prima facie case for discrimination based on protected activity; (2) adequately refute Defendant's legitimate, non-discriminatory reasons for his actions; (3) prove hostile work environment harassment because his employer's action was not based on a protected activity and was not sufficiently severe or pervasive; and (4) provide sufficient evidence to support his constructive discharge or Privacy Act violation claims. Plaintiff responded on December 28, 2007 and Defendant replied to the response on January 1, 2008. The Court held oral arguments on January 18, 2008, in which Plaintiff attempted to succinctly state his claims in open court and succeeded to

---

[1] Each individual instance is addressed below. See *infra* part IV. As Plaintiff does not coherently refute Defendant's classification of his claims or offer an organizational substitute, the Court will analyze them according to Defendant's Motion for Summary Judgment with incorporated statement of undisputed material facts and memorandum of law.

some degree with assistance from the undersigned.[2]  However, after reviewing the record, the Court

agrees with Defendant that Plaintiff has not met his burden, and therefore, it is

**ADJUDGED** that Defendant's Motion for Summary Judgment is **GRANTED**.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is authorized when there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The burden of

establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the party opposing the motion, who

must set forth specific facts and establish the essential elements of his case on which he will bear the

burden of proof at trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Inferences are drawn in favor of the non-moving party, but such inferences "must, in every

case, fall within the range of reasonable probability and not be so tenuous as to amount to speculation

or conjecture."  Thompson Everett, Inc. v. Nat'l Cable Advert., 57 F.3d 1317, 1323 (4th Cir. 1995).

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's

pleadings."  Fed. R. Civ. P. 56(c).  Rule 56(e) mandates that a party moved against respond with

affidavits, depositions, or otherwise, in order to reflect that there are material facts which must be

presented to a jury for resolution.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-61 (1970).

Conclusory allegations without specific supporting facts have no probative value.  Leigh v. Warner

Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (citing Evers v. Gen. Motors Corp., 770 F.2d 984,

986 (11th Cir.1985)).  Where the record could not support a finding by the trier of fact for the

---

[2] Though Defendant did not file a Motion to Dismiss, the Court notes that it could have dismissed this case
for Plaintiff's failure to clearly and concisely state his claim.

non-movant, there is no genuine issue for trial and summary judgment is appropriate.  Matsushita, 475 U.S. at 587.  Although there may be evidence somewhere within the non-moving party's submitted record that might create a genuine issue of material fact, "[t]he district judge is not required to comb the record to find some reason to deny a motion for summary judgment."  Forsberg v. Pac. N.W. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988).

### III. APPLICABLE LAW

#### *1. Retaliation*

Title VII prohibits retaliation by an employer against an employee because the employee has opposed an unlawful employment practice or made a charge under the statute.  42 U.S.C. § 2000e-3(a).  Barring direct evidence of discrimination, a plaintiff must establish a *prima facie* case of retaliation by showing that he suffered an employment action that a "reasonable person would find materially adverse."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 2415 (2006).  An adverse employment action is an ultimate employment decision, such as discharge or other conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee."  Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)).  These are actions that might dissuade a reasonable worker from making or supporting a charge of discrimination.  Burlington, 126 S. Ct. at 2415.

A plaintiff, in order to establish a *prima facie* case of retaliation, must also establish that there is a causal connection between his protected activity and his employer's action by showing that the decision-maker was aware of the plaintiff's activity and that the activity and the employer's action

were "not wholly unrelated." Gupta, 212 F.3d at 587.  The causality element is satisfied when the plaintiff: (1) provides evidence that the decision-maker had knowledge of the protected activity; and (2) shows "close temporal proximity" between the knowledge of the protected activity and the adverse employment action or provides other evidence suggesting causation.   Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (citing Shotz v. City of Plantation Fla., 344 F.3d 1161, 1180 n.3 (11th Cir. 2003)).

Once the plaintiff establishes a *prima facie* case of retaliation as to one or more of his claims, the burden then shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for the employer's action. Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). This is a light burden. If the defendant succeeds, the presumption of discrimination evaporates and the burden shifts back to the plaintiff to produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered reasons are "merely pretextual." *Id.* at 1024-25. The plaintiff must address and rebut each reason directly, and his evidence must be "significantly probative." See Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 444 (11th Cir. 1996), cert. denied, 521 U.S. 1119 (1997). After viewing all of the plaintiff's evidence, the Court must determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons such that a reasonable factfinder could conclude those reasons did not actually motivate the defendant's conduct. Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citations omitted).

The plaintiff cannot meet his burden by merely quarreling with either the wisdom of his employer's decisions or the process by which the decisions were reached. Chapman, 229 F.3d at 1024-25 at 1030.  Moreover, a plaintiff cannot prevail by simply showing that management on

occasion made a mistake or overreacted; rather, the action must not be discriminatory. Nix. v. WLCY Radio/Rahill Comm'ns, 738 F.2d 1181, 1187 (11th Cir. 1984). It is not the Court's role to reexamine or second-guess the wisdom of managerial decisions. Chapman, 229 F.3d at 1030.

### *2. Hostile Work Environment*

Under Title VII, a plaintiff can establish a hostile work environment claim if he proves that his workplace is "permeated with discriminatory intimidation, ridicule, and insult." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). To establish a hostile work environment claim, a plaintiff must establish each of the following elements: (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment;" and (5) the defendant was responsible for such environment under either a theory of vicarious or direct liability. Miller, 277 F.3d at 1275.

To determine whether harassment is sufficiently severe or pervasive, the Court considers four factors: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. Harris, 510 U.S. at 23. Plaintiff must establish that he subjectively perceived the work environment as hostile and abusive, but also that a reasonable person would perceive the environment as hostile and abusive. Gupta, 212 F.3d at 583. Even if a plaintiff succeeds in showing that he was subjected to such conduct, he must show the subjection was based on prior Title VII protected activity. Miller, 277 F.3d at 1275.

### 3.  Constructive Discharge

A constructive discharge occurs only when a discriminatory employer imposes working conditions that are "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign."  Nettles v. LG Sky Chefs, No. 05-17224, 2006 WL 3345290, at *1 (11th Cir. Nov. 20, 2006) (quoting Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003)); see also Hill v. Winn-Dixie Stores, Inc., 934 F.2d 1518, 1527 (11th Cir. 1991).  An employee has a duty to act reasonably before choosing to resign, and he must first notify his employer of the intolerable conditions and afford the employer an opportunity to correct them.  See Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987).

### IV.  ANALYSIS

### 1.  Retaliation

A.  Allegations that do not Constitute Adverse Employer Action

Under retaliation case law, Plaintiff must show that Defendant actually took some materially adverse action against the employee in order to establish a *prima facie* case.  Whether an action is materially adverse or not is determined by applying a reasonable person standard under Burlington. 126 S. Ct. at 2415.  The following allegations by Plaintiff do not constitute materially adverse employer action at all, much less concern protected Title VII activity:

(1)  Plaintiff was subjected to verbal abuse and ridicule by co-workers and a supervisor beginning in March of 2003;
(2)  The agency failed to reassign Plaintiff to the Vehicle Export Examination Station;
(3)  Plaintiff was ordered to send all personal effects shipments to one particular warehouse;
(4)  The agency allowed an employee to interfere with the performance of Plaintiff's duties and allowed a supervisor to counsel only Plaintiff about the incident;
(5)  The agency counseled Plaintiff not to speak to a co-worker who filed a complaint against him;

(6)     The agency "allowed" a private citizen to physically assault Plaintiff on November 26, 2003;

(7)     Plaintiff was asked to provide medical documentation when he was absent from work;

(8)     Plaintiff was again subjected to "verbal abuse" by a supervisor on January 26, 2004;

(9)     The agency allowed a co-worker to "continuously bully" Plaintiff;

(10)    Plaintiff was "falsely accused" by his supervisor of processing forged transportation entries and not adhering to Customs procedures;

(11)    Plaintiff's request for reassignment out of the Miami Free Trade Zone office to the Cargo Clearance Center was denied; and

(12)    Plaintiff was accused of disruptive behavior pertaining to the incident on November 26, 2003.

It is clear to the Court that these listed "actions" did not constitute ultimate employment decisions that altered Plaintiff's compensation, terms, conditions, or privileges of employment, deprived him or her of employment opportunities, or adversely affected his or her status as an employee. See Gupta, 212 F.3d at 587.

Claims (3) and (6) are clearly not employer actions and do not merit an in-depth discussion. Moreover, Defendant points out that Cavicchi instigated the confrontation that is the subject of claim (6). Being accused of disruptive conduct (claim (12)) is likewise not an adverse employment action.

Plaintiff had a number of interpersonal clashes during his employment as a Customs Inspector (claims (1), (4), (8), (9)). However, a hallway discussion with Chief Inspector Myra Quirk concerning Cavicchi's failure to attend a meeting (claim (1)) does not constitute "verbal abuse and ridicule" and is not an adverse employment action. Plaintiff also had a dispute with a co-worker named Ward Cox regarding a certain agency policy (claim (4)). Plaintiff's supervisor, Diane Georges ("Georges"), informed Plaintiff that Cox was correct regarding the policy and then issued a memo to all office personnel clarifying the policy. Plaintiff found this personally humiliating, but it is not an adverse employer action. Plaintiff further claims Cox harassed him on two other occasions (claim (9)). Plaintiff and Cox had an argument about leaving a door open and Plaintiff told Cox they could settle

the matter outside if Cox lost 30 pounds.  The final time, Cox objected in a meeting that part-timers should not be allowed to correct paperwork.  Again, neither of these instances constitute adverse employer actions.

Claim (8) dealt with an altercation Cavicchi had with a female co-worker.  Georges counseled both parties, but Plaintiff claims she yelled at him and took his co-worker's side.  Plaintiff responded to Georges by calling her a liar to her face and telling her that he was more experienced than she was.  This is not a materially adverse employer action.

With regard to claims (2) and (11), failure to transfer laterally or to a less prestigious position at the request of an employee does not qualify as an adverse employment action.  See Barnhart v. Wal-Mart Stores, Inc., 206 Fed. Appx. 890, 893 (11th Cir. 2006) ("A lateral transfer that does not result in 'lesser pay, responsibilities, or prestige' is not adverse.  Likewise, the refusal to give an employee such a transfer cannot be an adverse employment action.") (internal citations omitted). Additionally, under the reasonable person standard, the Court finds that the transfer denials in this case are not materially adverse.  Lastly, Defendant has supplied sufficient non-discriminatory reasons for the denials that Plaintiff has not established were merely pretext.  The first transfer request position was no longer filled by a locally negotiated rotation procedure and the location was staffed by full-time inspectors.  The latter transfer request could not be unilaterally granted by the Seaport Director because it constituted a transfer to another Port outside of his authority.  In the second instance, Cavicchi's inability to work with others also did not merit a "reward" according to Director Casale.

The Court fails to see how counseling Plaintiff not to speak with a co-worker who complained about him (count (5)) could be construed as discrimination based on Title VII protected activity.

Inspector Amy Everett filed a complaint against Plaintiff and Georges told Plaintiff not to speak with her about certain sensitive issues.  To the extent that this constitutes an adverse employment action, it is not material and there was clearly a legitimate, non-discriminatory reason.

Plaintiff also claims that he was falsely accused of processing forged entries (claim (10)).  In actuality, Georges sent Cavicchi an email informing him of proper procedures and thought he made the mistake because his name was on the records.  Someone other than Plaintiff actually processed the forms, and Georges therefore addressed the issue with that person and sent a memo to the office regarding proper procedures.  This is not a materially adverse employer action.

With regard to claim (7), Georges asked Plaintiff to provide medical documentation for a three-day absence.  Plaintiff was not technically required to do so unless he was absent for four days, and he brought the matter to his union's attention.  Georges rescinded the request and apologized. No action was taken whatsoever, therefore it cannot qualify as an adverse employer action.

B.  Potentially Materially Adverse Employer Actions

i. *Letters of Reprimand*

Letters of reprimand may constitute materially adverse employer action.  See Wallace v. Ga. Dept. of Transp., NO. CIV.A. 7:04-CV-78(HL),  2005 WL 2031111, at *11 (M.D. Ga. 2005) ("[I]n this circuit reprimands are among the employment actions generally considered to be 'adverse.'") (quoting Stavropoulos v. Firestone, 361 F.3d 610, 619 (11th Cir. 2004)); see also Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1240-41 (11th Cir. 2001).  Cavicchi was issued two letters of reprimand during the period of time at issue in this case. The first was issued on April 4, 2002.  He was given this letter after loudly accusing his first line supervisor at the time of lying and being a drunk.  The second letter was issued on December 21, 2004 for disrespectful and inappropriate

behavior.  The grounds for the letter consisted of Plaintiff's previous altercation with Cox, in which he threatened to take the matter outside, and for loudly calling Georges a "liar."

Both of these letters, though perhaps materially adverse, were shown by Defendant to have legitimate, non-discriminatory purpose.  Plaintiff offers no evidence that would allow the Court to conclude that these reasons were merely pretextual and that the actual reason these letters were issued was because of his Title VII protected activity.  Moreover, Plaintiff has not shown a close temporal relationship between his letters of reprimand and his EEO complaints.  Not only must Plaintiff provide evidence that his employer had knowledge of the protected activity, he must show "close temporal proximity" between the knowledge of the protected activity and the adverse employment action or provide other evidence suggesting causation.  Higdon, 393 F.3d at 1220 (citation omitted).

*ii. Agency Contacting an Employee Assistance Program Coordinator*

Georges contacted the EAP and discussed Plaintiff's situation with a coordinator.  Defendant claims that Georges encouraged Cavicchi to seek help because of the complaints lodged against him.  Plaintiff argues that Georges told him he needed psychological help.  The program was voluntary and Plaintiff refused assistance, regarding the EAP as a "joke."  The Court does not consider this contact an adverse employer action, particularly because there was no mandatory referral and the EAP is designed to assist, not punish, employees.  Defendant proffers as the legitimate, non-discriminatory reason Georges' desire to help Cavicchi.  Plaintiff does not draw the Court's attention to any evidence that this was merely pretextual or that it had anything to do with his Title VII protected activity.

*iii. Reassignment to Miami Free Trade Zone*

Two weeks after Plaintiff refused to send personal effects shipments to a particular warehouse as ordered by his superiors, Plaintiff was transferred to MFZ.  Defendant points out that even if this

was actually the reason for the transfer, it does not bear any relationship to Plaintiff's Title VII protected activity whatsoever.  The Court agrees.

Furthermore, Defendant offers the legitimate, non-discriminatory reason for the transfer that Cavicchi was experienced at processing "in-bonds," MFZ processed a large number of in-bonds, and the office was short-staffed.  Plaintiff complains that he was forced to clean out filing cabinets when he first arrived, but Defendant points out that Cavicchi's work was not limited to that task and that Georges was also cleaning out filing cabinets.  The Court does not agree with Plaintiff that the fact that Georges signed a leave request on which Plaintiff wrote that he was "subjected to verbal abuse, hostile work environment, admittance by SCI Georges that [he] was transferred, in part, because of [his] lawsuit" constituted an admission that he was transferred to MFZ because of his protected activity.  From the perspective of a reasonable factfinder, this is insufficient evidence to cast doubt on Defendant's proffered nondiscriminatory reasons for the reassignment.  See Combs, 106 F.3d at 1538.  As Defendant notes, Georges' signature on the leave request was to give supervisory approval to the leave requested, not to endorse Cavicchi's remarks.

*iv.  Confinement to Work Space*

On February 4, 2004, Plaintiff was ordered confined to his cubicle by Port Director Ramirez. While this would constitute an adverse employer action, the restriction lasted only about an hour and Plaintiff did not follow the order.  Thus, it scarcely satisfies the "material" component of the requirement for adverse action.  Moreover, Defendant proffered that Cavicchi had a number of issues with co-workers and highlighted specific instances of bad conduct in an effort to satisfy the requirement that there be a legitimate, non-discriminatory reason for the action.  Even if Defendant overreacted in this case, it is not the Court's job to second-guess management decisions as long as

they are not discriminatory.  See Nix, 738 F.2d at 1187; Chapman, 229 F.3d at 1030.

There is no indication that this restriction order was a result of Title VII protected activity. Plaintiff makes much of the fact that Port Director Ramirez knew about Plaintiff's EEO claims at one prior point in time when Plaintiff was refused a transfer.  In his deposition, Ramirez stated that he did not remember Cavicchi's EEO complaints.  However, even if the Court found that Ramirez was aware of Plaintiff's EEO claims, which would be proper to infer at the summary judgment phase, that fact alone is not sufficient to show causality.  Plaintiff must also show "close temporal proximity" between the knowledge of the protected activity and the adverse employment action or provide other evidence suggesting causation.  Higdon, 393 F.3d at 1220 (citation omitted).  Plaintiff has not provided such evidence.  The Court will not go so far as to infer Ramirez's discriminatory purpose based on Plaintiff's bombastic insinuations and accusations regarding the Port Director.

*v. Assignment to Deliver Interoffice Mail*

On July 14, 2005, Port Director Ramirez assigned Plaintiff the duties of collecting and delivering interoffice mail and delivering insect specimen to the USDA.  Plaintiff performed the duties for one week before complaining to another director, who removed him from the position. Cavicchi never returned to work, using annual leave, sick leave, and family medical leave until his retirement four months later.  Whether a particular reassignment rises to the level of retaliation depends on whether it is materially adverse from the perspective of a reasonable person.  Burlington, 126 S. Ct. at 2416-17.  In this instance, there are several factors weighing against Plaintiff.  First of all, he suffered no change to job title, supervisor, grade, pay or eligibility for promotion.  While under Burlington, reassignment of duties can constitute retaliatory discrimination even if it is not accompanied by demotion, Plaintiff performed the task for only one week and was promptly relieved

of the job when he complained about it. <u>See</u> 126 S. Ct. at 2416-17. <u>DaCosta v. Birmingham Water</u> <u>Works & Sewer Board</u> held that loss of prestige, the requirement that the plaintiff bring in a doctor's note when ill, and a pattern of abusive comments were not materially adverse employment actions. No. 07-11643, 2007 WL 4165939, at *3 (11th Cir. Nov. 27, 2007). In light of <u>DaCosta</u>, the Court does not find Plaintiff's reassignment to be materially adverse from the perspective of a reasonable person.

Even if this action was materially adverse, Defendant has offered a sufficiently legitimate, non-discriminatory purpose: Port Director Ramirez wanted to fill the position with a part-time employee and thought that Cavicchi would welcome the assignment since he wanted so badly to leave the MFZ. Again, Plaintiff has no evidence that Ramirez was influenced by Plaintiff's Title VII protected activity aside from allegations that Ramirez knew that Plaintiff filed EEO complaints. Plaintiff has not established that this reason was merely pretext. He has also failed to show "close temporal proximity" between the knowledge of the protected activity and the adverse employment action or provide other evidence suggesting causation. <u>Higdon</u>, 393 F.3d at 1220.

## *2. Hostile Work Environment*

Plaintiff appears to argue that the sum total of the incidents outlined above, which transpired over the course of several years, constituted a hostile work environment. Unfortunately for Plaintiff, the majority of the claims he has submitted as constituting a hostile work environment are trivial on their face. <u>See, e.g.</u>, <u>Brammer v. Winter</u>, No. 306CV16J32MCR, 2007 WL 4365643, at *9 (M.D. Fla. Dec. 12, 2007). The most glaring problem for Plaintiff, and one that the Court finds sufficient to dispense with his hostile work environment claim, is the fact that there is essentially no proof that any of the issues have anything to do with Plaintiff's "protected characteristic" (the fact that he filed EEO

and IA complaints).  See Miller, 277 F.3d at 1275; see also Brammer, 2007 WL 4365643, at *10.  At

best, Plaintiff points to some evidence that indicates that his supervisors and the Port Director were

aware of the fact that he had brought EEO claims.  There is evidence that some of his supervisors

were aware that he complained to IA, as well.  However, Defendant has supplied plenty of evidence

that the actions taken against Plaintiff did not concern his Title VII protected activity.  Plaintiff has

not adequately refuted this evidence, even though it is his responsibility to do so in order to defeat

summary judgment.

Even if the Court found that the environment was a result of Plaintiff's protected activity,

Defendant argues that the totality of the circumstances do not meet the "severe and pervasive" test.

See Miller, 277 F.3d at 1275.  The Court agrees.  Applying the Harris factors to this case, the Court

finds that the allegedly discriminatory conduct was infrequent and isolated, it was not severe, it was

not physically threatening, and it did not interfere with the employee's job performance.  See 510 U.S.

at 23.

Cases on hostile work environment often turn on the issue of frequency.  In Miller, the court

found for the plaintiff partly because he dealt with racial epithets on a daily basis.  277 F.3d at 1276.

Here the incidents were largely minor and intermittent.  This case is more similar to Barrow v.

Georgia Pacific Corp. than Miller.  See 144 Fed. Appx. 54, 57 (11th Cir. 2005).  In Barrow, racially

discriminatory acts occurred only a few times per year rather than during a "short and intense period,"

so the court found that the problem was "isolated and sporadic" and ruled in favor of the defendant.

Plaintiff complains that he subjectively suffered humiliating harassment based on protected activity,

but objectively a reasonable person in his situation would disagree.  See Gupta, 212 F.3d at 583.

An employer is subject to vicarious liability for a hostile work environment created by a

supervisor with higher authority over the employee.  Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998).  Defendant does not raise a Faragher affirmative defense for co-worker conduct,[3] but it does not need to do so under the circumstances.  Much of the activity complained of by Cavicchi was taken by other co-workers, not his employer.  Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action.  See Breda v. Wolf Camera & Video, 222 F.3d 886, 889 (11th Cir. 2000).  Defendant took direct remedial action in nearly every instance of co-worker conflict, usually in response to a disruption (or series of disruptions) caused or exacerbated by Plaintiff himself.  Plaintiff has not adequately shown that his Title VII activity was ever the instigating factor.

### 3. Constructive Discharge

Cavicchi did not get not fired and he did not resign.[4]  Rather, he filed for retirement on April 1, 2005, to take effect November 1, 2005, the first day he was eligible to retire and receive health benefits.  Plaintiff has not shown that working conditions were so difficult or unreasonable as to compel a reasonable person to resign.  See Hill, 934 F.2d at 1527.  Nor did Plaintiff notify his employer of intolerable conditions and afford Defendant an opportunity to correct them.  See Garner, 807 F.2d at 1539.  In fact, Cavicchi did not allege that he was subject to any discriminatory behavior during the three months prior to filing for retirement.

---

[3] Under Faragher, a defending employer may raise as an affirmative defense to liability or damages: "(a) that the employer exercised reasonable care to prevent and correct promptly any ... harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  524 U.S. at 807.

[4] In fact, had Plaintiff actually been fired, Defendant could have persuasively argued that he was within his rights to do so.  However, the Court need not reach that question here.

Moreover, even though Plaintiff attempts to rely on his July 14, 2005 assignment to interoffice mail duty in support of his constructive discharge argument, the Court notes that he had already filed his application for retirement several months beforehand.  Cavicchi was removed from this allegedly degrading duty as soon as he complained about it, after only a week.  Plaintiff never returned to work, so Defendant did not have an opportunity to further rectify the allegedly intolerable conditions.  These facts are not indicative of working conditions that are so intolerable that a reasonable person would have been compelled to resign.  See Nettles, 2006 WL 3345290, at *1 (citation omitted).

### *4. Privacy Act Violation*

Plaintiff did not respond in defense of his Privacy Act claim against Defendant's Summary Judgment or move for summary judgment on the Privacy Act claim; therefore, the Court treats that claim as abandoned.  See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (noting that claims not raised in summary judgment or pressed in opposition to summary judgment are properly treated as abandoned) (citing Lazzara v. Howard A. Esser, Inc., 802 F.2d 260, 269 (7th Cir. 1986).

### V.  CONCLUSION

Plaintiff has failed to establish a *prima facie* case of unlawful discrimination or retaliation based on Title VII protected activity for many of his individual allegations.  Even in the instances where he has succeeded in laying out a *prima facie* case for summary judgment purposes, Plaintiff has failed to establish that Defendant's articulated legitimate, non-discriminatory reasons for its actions were pretextual.  Moreover, Plaintiff has not shown that a hostile work environment existed as a result of his protected activity or that it was sufficiently severe and pervasive.  Plaintiff also cannot establish a constructive discharge claim, and he has abandoned his Privacy Act claim.  In sum,

Plaintiff failed to establish a genuine issue of material fact regarding any of his allegations. The Court cannot conclude that a triable issue exists simply because certain supervisors were aware that Cavicchi filed EEO and IA complaints and Plaintiff perceived that he was treated poorly. While the Court draws inferences in favor of the non-moving party, in this case the evidence is so tenuous that any inferences regarding Title VII discrimination amount to speculation and conjecture. See Thompson Everett, 57 F.3d at 1323. The Court reiterates that it is not obligated to scour the record and dissect Plaintiff's rambling pleadings, which are laden with inflammatory rhetoric, to come up with evidence indicative of a genuine issue of material fact. See Forsberg, 840 F.2d at 1418.

In the end, the record paints a clear picture of discord between Cavicchi and most of his co-workers and supervisors. Plaintiff has called members his office liars, thieves, and sell-outs, complained that avenues of employee assistance were "jokes," regarded complaints against him as "jokes," and even threatened to fight one of his co-worker (but only if he lost weight first). Moreover, Plaintiff has treated the court system as if it were a merger between soapbox and circus. Plaintiff has not sought to advocate a potentially legitimate claim of discrimination so much as take the opportunity to rail against Defendant for every perceived slight. Throughout the course of pleadings and in the record of this case, Plaintiff has broached numerous irrelevant topics and cast insults and accusations at nearly everyone whom he feels has wronged him. Plaintiff has called Port Director Ramirez a "liar" and a "dirt bag" and brought up allegations of sexual harassment against him. Plaintiff has complained at length about the EEOC. He has even blamed the death of a Customs employee on his own supervisor. Obviously, none of this has anything to do with Plaintiff's case.

Plaintiff also discussed a sexual harassment complaint against him and a letter of complaint that he claims was fabricated by Defendant's counsel. Neither of these are at all relied upon by

-18-

Defendant in Defendant's Motion for Summary Judgment.  Finally, to the extent that Plaintiff attempts to resuscitate claims based on incidents that occurred before February of 2002, those claims have been adjudicated in prior cases before this Court and are therefore barred under the doctrine of *res judicata*.  See 01-03406-CIV-MARTINEZ; 03-21764-CIV-MORENO.

Summary Judgment is **GRANTED** in favor of Defendant on all claims.  Further, it is

**ADJUDGED** that all pending motions are **DENIED** as moot.

DONE AND ORDERED in Chambers at Miami, Florida, this 28 day of January, 2008.

_____

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record